# Robert L. Walston and E. L. Pegram v. Henry W. Denny.

1. TENDER—*Effect of Acceptance.*—Where a tender is made upon terms and accepted, the person accepting it binds himself by the terms annexed to it, and is estopped from thereafter claiming that he did not accept it upon the terms proposed.

Assumpsit, for work and labor. Trial in the Circuit Court of Macon County; the Hon. EDWARD P. VAIL. Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the May term, 1899. Reversed and remanded. Opinion filed September 20, 1899.

J. M. GRAY, attorney for appellants.

LEFORGEE & LEE, attorneys for appellee.

MR. PRESIDING JUSTICE WRIGHT delivered the opinion of the court.

Appellee brought this suit against appellants before a justice of the peace, claiming compensation for the labor of removing bricks from kilns and for filling and smoothing the place of the kilns upon the farm of appellant Walston. The suit was appealed to the Circuit Court, where a trial by jury resulted in a verdict and judgment against appellants for $58 and costs, from which they appeal to this court. The errors mostly urged upon our attention, for which a reversal of the judgment is sought, are that the verdict and judgment are not supported by the evidence, and that the court in its instructions misdirected the jury.

Appellant Walston purchased a farm of Cavenaugh, upon which were kilns of brick, sold by the latter to appellant Pegram. It being understood by the parties interested that Pegram was to remove the brick from the kilns, appellant Walston employed appellee to fill the holes from which clay had been taken, and also the places of the kilns after the brick should be removed by Pegram for a compensation

of $75. This was in the fall of 1896. Pegram being unable to dispose of his brick advantageously as soon as was expected, requested Walston to permit them to remain in the kilns for such reasonable time as might enable him to dispose of them by sale, in consideration of which he, Pegram, would have the holes where the kilns stood filled as soon as the bricks were removed; whereupon, in the spring of 1897, appellee performed his contract with Walston with the exception of that part of the work undertaken by Pegram, and for which Walston paid him the full contract price of $75. There was much more delay by Pegram in removing the brick kilns than Walston expected. It appears also from the evidence that Pegram had employed appellee to do the remaining work, and, as contended by the former, for $15, although much of the controversy is centered around this question. Walston, becoming impatient, urged both Pegram and appellee to hasten the work, but it was not finished until the spring of 1898, and at that time appellee demanded of Pegram $75 for his labor, and upon refusal he made the same demand upon Walston, who likewise refused, for the assigned reason that Pegram was alone liable for the work, and thereupon this suit was commenced.

At the trial before the justice of the peace, Pegram tendered to appellee $15 and all costs accrued to that time, which tender was refused when offered personally to appellee and his attorney. Appellant Pegram then deposited the tender with the justice of the peace, who placed it upon his desk, whereupon the attorney for appellee, without the leave of the court or consent of Pegram, but against the objection of both, took the money tendered, still on the desk of the justice of the peace, and then gave it to appellee, who, concerning this incident, testified:

" I heard a tender being made by the defendants for the money they claimed was due, and I accepted it. The tender was a settlement in full, but we did not accept it that way. The defendants refused to tender it any other way except as a tender in full and turned it over to the justice of the peace, Shorb. My attorney took it from him and I have got it

still, and refuse to give it back, and for that reason Shorb dismissed the case and I appealed."

The court, in its instructions to the jury, submitted an issue of fact to them concerning this tender, and thereby directed them that if they believe from the evidence that the tender was only accepted by the plaintiff as a payment on his account, this would not bar his right of recovery between the sum tendered and the reasonable value of his services, to which appellants excepted.

We do not question that by the weight of all the authorities this instruction states the law correctly, but as applied to this case it is an abstract question merely. Here there was no evidence upon which to base the instruction and no issue of that nature to be submitted to the jury. The testimony of appellee was to the effect the tender was accepted, and under the circumstances of its acceptance it was not in his power to change the terms upon which the tender was made without the consent or acquiescence of the person making it, and the evidence is conclusive that appellants neither consented to or acquiesced in any modification of the terms annexed to the tender. One of the reasons for the rule of law permitting a tender in such cases is that an end may be put to litigation. If, as in this case, after tender has been personally made and refused, and the money deposited with the court, as the law directs, in order that such tender may be kept good, the opposite party may be tolerated to appropriate the tender upon its own terms, against the authority of the court and the consent of his adversary, little encouragement would be afforded to litigants to avoid litigation by this method. We are of the opinion, if necessary to prevent a party from taking such advantage of an unwarrantable act of this nature, that the doctrine of estoppel might well be invoked, to prohibit him from thereafter claiming that he did not accept the tender upon the terms proposed. We are therefore of the opinion that appellee, in the acceptance of the tender in the manner he did, thereby bound himself to the terms annexed to it.

Upon an examination of the evidence we are of the opin-

ion it fails to prove by a preponderance thereof that Pegram and Walston are jointly liable for the claim of appellee for the work performed by him.    The clear preponderance is, we think, that for this work Pegram alone is liable, and it was error to render a joint judgment against the appellants.

The views we have already expressed supersede the necessity of considering further the objections urged against the instructions.    For the errors indicated, the judgment of the Circuit Court will be reversed and the cause remanded to that court, and, because of the acceptance of the tender, with directions to dismiss the suit.    Reversed and cause remanded.